IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BILL BARRIER**,<br><br>        Plaintiff,<br><br>    v.<br><br>**CITY OF THE DALLES**,<br><br>        Defendant. | Case No. 3:18-cv-1084-AC<br><br>**ORDER** |

Carl Post and John Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 S.W. Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Joshua P Stump, BUCKLEY LAW, P.C., 5300 Meadows Road, Suite 200, Lake Oswego, OR 97035. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      United States Magistrate Judge John V. Acosta issued findings and recommendation in this case on December 21, 2020. Judge Acosta recommended that this Court grant the motion for summary judgment filed by Defendant, City of the Dalles (City). Plaintiff, Bill Barrier, timely filed an objection, to which Defendant responded. Plaintiff objects to the portions of Judge Acosta's findings and recommendation that part of Plaintiff's proffered evidence is inadmissible hearsay and that Plaintiff has not shown a genuine issue that Defendant's legal, non-discriminatory reason for terminating Plaintiff's employment was pretextual. Plaintiff does not

PAGE 1 – ORDER

object to Judge Acosta's findings and recommendation that Defendant's motion for summary judgment be granted on Plaintiff's second claim for retaliation and discrimination in violation of the American with Disabilities Act (ADA) and his third claim for retaliation and discrimination in violation of Oregon law[1] that provides a cause of action similar to the ADA.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

---

[1] Or. Rev. Stat. § 659A.103-659A.144.

PAGE 2 – ORDER

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiff was employed by Defendant in the City's public works department for more than 24 years. He began in 1992 as an equipment operator and was promoted to transportation supervisor in 1997. Plaintiff has an ongoing record of workplace discipline, beginning in 2001 with a "Charge of Inappropriate Behavior," in 2006 with a written reprimand for creating a hostile work environment, in 2008 with a counseling and performance coaching session instead of discipline for a number of complaints about hostile behavior, and in November 2013 with an "Investigative Findings and Notice of Disciplinary Decision" letter in response to Plaintiff threatening to bring a gun to his meeting with a city financial planner. In response to this incident, Plaintiff was suspended from work without pay for five days. In 2006, David Anderson (Anderson) began his service as the City's Public Works Director and Plaintiff's supervisor.

Plaintiff was injured in February 2012 when he fell while feeding horses on his property. As a result, Plaintiff severed a tendon in his right foot. In November 2013, Plaintiff slipped on a rug while moving boxes at work and fell, hitting his head and hurting his back. He filed a worker's compensation claim about this incident, which was partially approved and partially denied, because it was determined that he had not injured his back in the accident but instead suffered from pre-existing arthritis. In 2014, Plaintiff had lower lumbar surgery to alleviate his back injury. He filed a second worker's compensation claim. In 2015, Plaintiff strained his upper back while performing a task at work, and he filed his third worker's compensation claim. In 2015, Charlie Patterson (Patterson), one of the employees whom Plaintiff supervised, met with Stephen Lawrence (Mayor Lawrence), the City's mayor. Patterson later told Plaintiff about the meeting. Plaintiff alleges that Patterson said that Mayor Lawrence asked Patterson how many worker's compensation claims Plaintiff had filed, to which Patterson answered "a few" and that Mayor Lawrence then replied, "more than a few."

In December 2016 and January 2017, Defendant received multiple complaints from residents about interactions with Plaintiff during a winter storm. The complaining customers described Plaintiff's behavior as rude and unprofessional. In response, Anderson reviewed Plaintiff's employment record and began preparing a memorandum (the Memorandum) for a meeting with Plaintiff and City Manager Julie Kreuger (City Manager Krueger). On January 21, 2017, Anderson discussed with City Manager Krueger and Daniel Hunter (Hunter), a human resources manager, possible disciplinary actions that could be taken based on Plaintiff's history of misconduct.

On February 9, 2017, Plaintiff fell on his arm while working. According to Plaintiff, he fell because his previous injuries caused him to be less stable. Plaintiff completed an accident

form the next day and notified Anderson of the injury. On February 13, 2017, Plaintiff sought medical attention and completed his fourth worker's compensation claim; Plaintiff states that he tore his shoulder and needed surgery. The next day, February 14, 2017, Plaintiff slipped on a rug at work but did not fall; he reported this "near miss slip" to the Safety Committee.

On March 31, 2017, Anderson finalized the Memorandum, which had been prepared in the process of determining whether Plaintiff had failed to meet his professional responsibilities or violated the City's "Guidelines for Appropriate Conduct," which had been in effect for City employees since 1997. The Memorandum identified two areas of concern: Plaintiff's conduct and the culture regarding policy compliance and safety in the Transportation Division under Plaintiff's leadership. It identified four residents who had complained during the winter of 2016/2017, and it summarized four instances that illustrated the culture promoted in the Transportation Division. Plaintiff received the Memorandum on April 11, 2017, when he returned from vacation. He met with Anderson and Hunter on April 17, 2017 to discuss it.

Plaintiff drafted his responsive letter on April 12, 2017. Plaintiff attached to his response a statement signed by five Transportation Division employees. Hunter read Plaintiff's letter and investigated. Hunter learned that Plaintiff had prepared the statement and that two employees who signed it had felt pressured to do so. Those employees also shared that they had witnessed conduct by Plaintiff that was inappropriate.

On May 22, 2017, City Manager Krueger terminated Plaintiff's employment and gave Plaintiff a termination letter that cited, as reasons for Plaintiff's termination, Plaintiff's history of disciplinary actions and the complaints from the public, as well as Plaintiff's decision to have his subordinates sign a letter in his support. Plaintiff appealed his termination, and the appeal was denied. Plaintiff brought this lawsuit against Defendant, alleging that he was terminated in

retaliation for filing the 2017 worker's compensation claim, in violation of Or. Rev. Stat. § 659A.040. Plaintiff also alleged the City violated Or. Rev. Stat. § 59A.112 and the ADA by retaliating against him for requesting an accommodation and terminating him because of his disability. Judge Acosta granted Defendant's motion for summary judgment as to all three claims.

## DISCUSSION

Plaintiff objects to Judge Acosta's recommendations that certain evidence constituted inadmissible hearsay and that Plaintiff had not provided sufficient evidence to rebut the legal, non-pretextual reason given by Defendant for the termination of Plaintiff's employment. The Court addresses each in turn.

**A. Defendant's Motion to Strike Plaintiff's Hearsay Evidence**

In 2010, Joseph Greiman sued the City, alleging that he was terminated in retaliation for filing worker's compensation claims and reporting an assault by a coworker (the Greiman Lawsuit). Plaintiff proffered *Mr. Greiman's* interrogatory responses from the Greiman Lawsuit as evidence in support of Plaintiff's opposition to Defendant's motion for summary judgment. Judge Acosta found that the interrogatory answers from Mr. Greiman were inadmissible hearsay because they were offered for the truth of the matters asserted therein, *i.e.*, that the City terminated Mr. Greiman based on his filing of worker's compensation claims.

Plaintiff objects and argues that at the summary judgment stage the Court should have considered evidence not in its present form, but for the form it *could* take at trial, and therefore Mr. Greiman's interrogatory responses should have been considered because they could be presented in admissible form at trial through testimony by Mr. Greiman. Defendant responds that Judge Acosta correctly excluded Mr. Greiman's interrogatory answers and adds that any error in

exclusion is harmless because the interrogatory responses would not change the outcome of Judge Acosta's decision on the motion for summary judgment.

Plaintiff argues that Mr. Greiman's interrogatory answers show a pattern of terminating employees who file too many worker's compensation claims. Plaintiff also argues that Mr. Greiman's testimony at trial would be used to "impeach Mr. Anderson's position that he did not terminate Mr. Barrier because he filed one too many workers' compensation claims." ECF 53 at 2. Plaintiff adds that Mr. Greiman's trial testimony may provide "direct comparator evidence . . . [because] Anderson displayed the same pattern of retaliation in that case by manufacturing concerns about past alleged misconduct." ECF 54 at 2.

Out of court statements offered to impeach a witness, rather than for the truth of the matter asserted, are not hearsay. Plaintiff, however, argues that Mr. Greiman's testimony about Anderson's actions or statements will be admissible at trial as impeachment but fails to explain how this evidence would impeach Anderson. The Court has seen no evidence or argument that Anderson has made representations in this case about his interactions with Mr. Greiman or the reason for Mr. Greiman's termination, or anything else that could show a basis for impeaching Mr. Anderson's testimony at trial.

Plaintiff also argues that Mr. Greiman's testimony is admissible because it shows that Mr. Greiman was terminated in retaliation for filing a worker's compensation claim. An individual's subjective belief they were discriminated against is not proof that the individual was actually discriminated against. Mr. Greiman settled his lawsuit before trial, and no findings were ever made regarding the truth of Mr. Greiman's allegations. The mere existence of a single lawsuit brought seven years before Plaintiff's and Mr. Greiman's untested allegations in that lawsuit will not likely be admissible in the pending matter as proof that Defendant terminated

Mr. Greiman's employment in retaliation for his filing worker's compensation claims. Thus, even if Plaintiff intended to offer Mr. Greiman's testimony at trial to show a pattern and practice of retaliation, there would be no evidentiary value because Mr. Greiman cannot testify beyond his own subjective beliefs. That testimony would likely be excluded. Accordingly, the Court adopts Judge Acosta's recommendation that Mr. Greiman's interrogatory responses be stricken.

**B. Defendant's Motion for Summary Judgment based on Failure to Show Pretext**

Judge Acosta concluded that Plaintiff had alleged a prima facie case of discrimination, that Defendant provided a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and that Plaintiff did not rebut that reason with evidence showing pretext. Plaintiff objects to this finding, arguing that the short period of time between the protected activity and the termination results in an inference of pretext sufficient to survive summary judgment. Plaintiff argues the Judge Acosta erred by failing to credit the temporal proximity between Plaintiff's final worker's compensation claim and his termination to find that the reason for Plaintiff's termination was pretextual. Plaintiff also argues that the winter storm complaints are pretextual because they are relatively slight when viewed in the context of that storm and the length of Plaintiff's employment. Defendant responds by stating that the timing merely establishes the *prima facie* case and more must be shown to demonstrate pretext, and that the process leading to Plaintiff's termination was begun before his final worker's compensation claim and was based on much more than the winter storm complaints.

Although the Memorandum preparation process occurred behind the scenes and was not apparent to Plaintiff, Anderson began compiling the report on Plaintiff's long history of disciplinary violations in January 2017, before Plaintiff's final worker's compensation claim in February 2017. Further, the Memorandum and the other evidence presented to the Court shows that Plaintiff was not terminated solely for the customer complaints during the winter storm, but

because of a long history of infractions, including more serious conduct. Additional evidence shows concerns by Defendant that arose after the Memorandum was shown to Plaintiff, including the fact that Plaintiff pressured two of his subordinates to sign a letter supporting him, and information gained from those employees in the course of investigation further supporting termination.

Plaintiff cites to cases and quotes excerpts purporting to show that a short period of time between the protected activity and the adverse employment outcome is sufficient to demonstrate pretext. Plaintiff's citations are unavailing and often refer to reliance on time proximity for reasons other than showing that the proffered legitimate reason for adverse employment action was pretextual or to decisions under other laws and frameworks. None of the cases cited by Plaintiff stand for the proposition that a court *must* deny summary judgment when a protected activity occurs three months before termination.[2] As Defendant highlights, permitting the exact same evidence to make the prima facie case and to demonstrate pretext would eliminate the *McDonnell-Douglas* framework and require a Plaintiff only to make a *prima facie* case. Judge Acosta considered the evidence holistically, weighing the reason proffered by Defendant and the argument for pretext asserted by Plaintiff. The court has reviewed Judge Acosta's findings and recommendation *de novo* and adopts them.

---

[2] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (stating that temporal proximity may make prima facie case and upholding grant of summary judgment in favor of defendants); *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 439, 507 (9th Cir. 2000). (noting that proximity "can" give rise to an inference of retaliation); *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (stating that proximity may make prima facie case); *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 870-71 (9th Cir. 1996) (applying California state law on employment discrimination); *Peterson v. Tri-County Metro. Transp. Dist.*, No. CV-06-1828- ST, 2008 U.S. Dist. LEXIS 20881, at *36 (D. Or. Mar. 14, 2008) (relating to FMLA claim not applying *McDonnell-Douglas* framework).

## THE CONCLUSION

The Court ADOPTS Judge Acosta's findings and recommendation (ECF 54) and GRANTS summary judgment for Defendant (ECF 38).

**IT IS SO ORDERED**.

DATED this 6th day of April, 2021.

/s/ <i>Michael H. Simon</i><br>
Michael H. Simon<br>
United States District Judge